IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AON PLC and AON GROUP, INC., <br><br> **Plaintiffs,** <br><br> vs. <br><br> INFINITE EQUITY, INC., TERRY ADAMSON, JON BURG, DANIEL COLEMAN, ELIZABETH STOUDT, and TYLER EVANS, <br><br> **Defendants.** | CASE NO.  1:19-cv-07504 <br><br> Hon. Martha M. Pacold |

## PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER

Plaintiffs Aon plc and Aon Group, Inc. (collectively, "Aon" or "Plaintiffs"), pursuant to Federal Rule of Civil Procedure 65(b), move this Court to enter a temporary restraining order because: (i) Jon Burg ("Burg"), Daniel Coleman ("Coleman"), Elizabeth Stoudt ("Stoudt"), Tyler Evans ("Evans"), and Infinite Equity, Inc. ("Infinite Equity")[1] either misappropriated, threaten to misappropriate, or inevitably will use or disclose Aon's trade secrets in violation of the Defend Trade Secrets Act and the Illinois Trade Secrets Act; (ii) the Former Employees breached their fiduciary duties to Aon; (iii) Burg and Coleman breached or threaten to breach their contractual commitments to Aon; and (iv) Infinite Equity, Burg, Coleman, and Stoudt tortiously interfered with Burg's and Coleman's agreements with Aon. In support of this Motion, Aon states as follows:

1. On November 13, 2019, Aon filed its Verified Complaint ("Complaint"), alleging seven causes of action:: (i) threatened and actual misappropriation of trade secrets under the Defend Trade Secrets Act and the Illinois Trade Secrets Act against all Defendants except Terry

---

[1] Burg, Coleman, Stoudt, and Evans are referred to in this Order as the "Former Employees."

Adamson ("Adamson") (Counts I and II); (ii) breach of Burg's, Coleman's, and Adamson's valid and enforceable agreements with Aon, which contain restrictive covenants and confidentiality commitments (Count III); (iii) breach of fiduciary duty as to Burg, Coleman, Stoudt, Adamson, and Evans (Count IV); (iv) tortious interference with contract against all Defendants except Evans, and tortious interference with prospective economic advantage as against all Defendants (Counts V and VI); and (v) unjust enrichment as against Infinite Equity, Burg, Coleman, Stoudt, and Evans (Count VII) (Dkt. No. 1, cited herein as "Compl., ¶ __"). Summons were issued to all Defendants, a waiver of service was filed as to Defendants Coleman, Stoudt, and Evans, and Defendants Burg and Infinite Equity were served on November 15, 2019 and November 18, 2019, respectively. *See* Dkt. Nos. 13, 17-19.

2. On January 2, 2020, together with this motion, Aon filed a Motion for Expedited Discovery. In that motion, Aon seeks leave to take limited discovery relevant to this motion for a temporary restraining order and in advance of a preliminary injunction hearing.

3. As more fully explained in the Verified Complaint, Aon is a leading provider of state-of-the-art products and services to help companies with employees around the world effectively use equity compensation. It established this position through its long-term investment in its employees, client relationships, and confidential and trade secret information. (Compl., ¶ 2).

4. Burg was a Partner and led Aon's Equity Services group; Coleman and Stoudt were Associate Partners and, respectively, the Central and Philadelphia practice leaders for Aon Equity Services. *Id*., ¶ 3. Evans was a Senior Developer. *Id*., ¶ 23. At Aon, the Former Employees cumulatively received decades of training, support, development, client introductions, exposure to confidential, proprietary and trade secret information, and lucrative opportunities. *Id*., ¶ 4.

5. The Former Employees oversaw, formulated, and developed *PeerTracker*—a program that took Aon **years and hundreds of thousands of dollars to create** and which is unique to the industry, differentiating Aon from its competition. *Id.,* ¶ 4. Evans helped develop *PeerTracker. Id.*[2]

6. Despite Aon's significant investment in the Former Employees, for over a year and while employed by Aon, the Former Employees furtively schemed, planned, and secretly met while at events funded by, and which they expensed to, Aon, to create a company (n/k/a Infinite Equity) that would compete directly against Aon Equity Services. *Id.*, ¶ 5.

7. In furtherance of their scheme, while the Former Employees were still employed with Aon:

- They downloaded the instant messaging application "WhatsApp" so that they could communicate about their rival company during business hours;

- **Burg**, **Coleman**, and **Stoudt** spoke to Aon Equity Services employees about leaving Aon, and recruited each other and others to leave Aon and create a rival company;

- **Burg** filed a Certificate of Incorporation of Infinite Equity, Infinite Equity established email addresses used by Aon employees while still employed by Aon to try and access Aon's internal communication system;

- **Coleman** forwarded from his Aon email address to his personal email address proprietary and trade secret equity simulation models and confidential client files;

- None of the Former Employees advised Aon that the others were creating a rival company to compete against Aon.

*Id.*, ¶¶ 9, 95, 109, 123.

8. Then, between May 1, 2019 and June 10, 2019, Burg, Stoudt, Coleman, and other Aon employees resigned from Aon. *Id.*, ¶¶ 10, 106 – 108. On his last day of employment, Coleman

---

[2] *PeerTracker* is a web-based application that tracks performance of equity for clients.

3

printed 46 documents, and was still printing as late as 6:16 PM. *Id*., ¶¶ 10, 112. In the week prior to his last day with Aon, Coleman printed 191 documents. *Id*.

9. By June 10, 2019, nine Aon Equity Services colleagues (and approximately 15% of Aon's Equity Services group) left Aon, all of whom reported directly or indirectly to one or more of the Former Employees. *Id*., ¶¶ 11, 120.

10. By early July 2019, Infinite Equity's website was live. *Id*., ¶¶ 12, 126. Infinite Equity offers services and products materially similar to those offered by Aon, including *MyPerformanceAwards*, a product virtually identical to Aon's *PeerTracker*. *Id*. Aon first conceived the idea for *PeerTracker* in 2007, and it took Aon *over a year* to develop even a prototype of the program. *Id*., ¶ 60. Yet, Defendants were able to create a near replica of *PeerTracker* immediately upon resigning from Aon. *Id*., ¶ 12.

11. As of the filing of the Verified Complaint, at least two Equity Services clients transferred some or all of their business from Aon to Infinite Equity. *Id*., ¶¶ 13, 136-139. One was a client of Aon for over 10 years. *Id*. Coleman also solicited Aon employee Amanda Benincasa. *Id*., ¶¶ 140-143.

12. Since Aon's Verified Complaint was filed, Defendants' unlawful activities have accelerated. Defendants continue to utilize *MyPerformanceAwards*.[3] In addition, in just the past two weeks, Aon learned that at least two other clients are ending their relationship with Aon, including the *PeerTracker* service, and are moving to Infinite Equity. *See* Declaration of Daniel Kapinos, ¶¶ 4-7. One client admitted that he spoke to Burg. *Id.*, ¶ 6.

13. On December 16, 2019, Aon wrote to Defendants' counsel demanding the immediate return of Aon's confidential, proprietary, and trade secret information, the immediate

---

[3] *See* https://www.infiniteequity.com/solution/my-performance-awards/ (last visited January 1, 2020).

forensic inspection of *MyPerformanceAwards*, and seeking assurances that Coleman and Burg will abide by their agreements with Aon. *See* Declaration of Jessica F. Pizzutelli, Ex. A.

14. To date, Defendants have yet to provide any substantive response; signaling their intention to continue to reap the benefits of their fiduciary breaches, continue to misappropriate Aon's trade secret information, and/or continue to breach their contractual commitments to Aon (or encourage and induce such breaches). *Id.,* Ex. B.

15. Defendants' ongoing, currently unchecked, assault on Aon's Equity Services business is causing Aon immediate, irreparable harm by impairing Aon's goodwill and reputation with its clients, destroying Aon's established customer relationships that it has invested years to build, disrupting the stability of Aon's Equity Services business and workforce, and threatening the continued misappropriation of Aon's confidential, proprietary and trade secret information. Aon's injuries cannot be fully measured by a pecuniary standard nor does Aon have an adequate remedy at law for these ongoing injuries.

WHEREFORE, for the foregoing reasons, and for the reasons set forth in Plaintiffs' Memorandum of Law in Support of its Motion for Temporary Restraining Order, Plaintiffs pray that this Court enter an Order:

1. Enjoining and restraining Burg, Coleman, Stoudt, Evans, and Infinite Equity, and anyone acting in concert with them, from servicing, accepting business from, or performing any work for any Aon clients that Burg, Coleman, Stoudt, or Evans worked with, or supervised the work for, during the time period January 1, 2018 until their respective resignations from Aon, and further enjoining and restraining the Former Employees and Infinite Equity, and anyone acting in concert with them, from soliciting or inducing any employee of Aon to work for Infinite Equity.

2. Requiring Infinite Equity, and anyone acting in concert with it, to suspend any and all public or private access to *MyPerformanceAwards* and to quarantine any and all employees or clients from further access to or use of that program.

3. Enjoining and restraining Burg and Coleman, and anyone acting in concert with them, including without limitation Infinite Equity, from violating any of the terms of their respective RSU Agreements referenced in the Verified Complaint, including but not limited to:

   a. Directly or indirectly calling upon, soliciting, accepting, engaging in, servicing or performing any business of the same type or kind as the business performed by Aon from or with respect to clients with whom Burg or Coleman provided services (either alone or with others), had a business relationship with, whose account he worked on, became familiar, or supervised, either directly or indirectly, the servicing activities related to such clients, during the twenty-four (24) months prior to his resignation from Aon, and further provided that such clients were clients of Aon either on the date he resigned or was a client within the twelve (12) months prior to his resignation; and

   b. Directly or indirectly, soliciting or inducing, or causing any person or other entity to solicit or induce, any employee of Aon to work for Burg or Coleman, or for any third party or entity, including without limitation Infinite Equity, or to leave the employ of Aon; and

   c. Utilizing, divulging, disclosing, or misusing any Aon Confidential Information (as defined in Burg's and Coleman's RSU Agreements referenced in the Verified Complaint).

4. Prohibiting all Defendants, and anyone acting in concert with them, from utilizing, divulging, disclosing, or misusing any Aon confidential information or trade secrets, including without limitation any information the Former Employees learned or obtained about *PeerTracker* while the Former Employees were employed by Aon, any Aon business information emailed to

6

any of the Former Employees' personal or Infinite Equity email addresses, any Aon information the Former Employees copied to a USB device, and any other information relating to the business of Aon which Defendants became aware of by reason of the Former Employees being employed by Aon or to which the Former Employees gained access to during his or her employment by Aon which has not been publicly disclosed.

5. Requiring all Defendants to return all Aon confidential and trade secret information to Aon within three (3) business days of the date the Order is entered, and requiring Infinite Equity to submit for inspection, by a forensic examiner, every iteration of the source code for *MyPerformanceAwards* since *MyPerformanceAwards* was first created.

6. Requiring all Defendants to preserve all documents, electronically stored information, and other information relevant to the factual allegations and claims contained within Plaintiffs' Verified Complaint, including any communications, text messages, or emails on personal electronic devices, such as cellular telephones, or stored in email or other cloud storage accounts, by and between the Individual Defendants; between Infinite Equity and the Individual Defendants; between Defendants and any Aon employee; and between Defendants and any Aon client or prospective client.

7. Requiring Stoudt to turn over the thumb drive (and any documents copied on to the thumb drive) that was inserted in her Aon computer within three business days of the date the Order is entered.

Date: January 2, 2020　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　**AON PLC AND AON GROUP, INC.**


　　　　　　　　　　　　　　　　　　　　　/s/ *James M. Witz*


James M. Witz
*jwitz@littler.com*
Orly Henry
*ohenry@littler.com*
Matthew Ruza
*mruza@littler.com*
**LITTLER MENDELSON, P.C.**
321 North Clark Street, Suite 1000
Chicago, Illinois 60654
(312) 372-5520

Jessica F. Pizzutelli (admitted *pro hac vice*)
*jpizzutelli@littler.com*
**LITTLER MENDELSON, P.C.**
375 Woodcliff Drive, Suite 2D
Fairport, New York 14450
(585) 203-3400

**CERTIFICATE OF SERVICE**

I, James M. Witz, an attorney, certify that I served a copy of Plaintiffs' Motion for a Temporary Restraining Order on the parties below via email and U.S. Mail on January 2, 2020:

Maxwell Kling
Cory Anderson
Matthew P. Connelly
Rock Fusco & Connelly, LLC
321 N. Clark Street, Suite 2200
Chicago, IL 60654
Attorneys for Infinite Equity, Jon Burg, Daniel Coleman, Elizabeth Stoudt, and Tyler Evans

Kenneth J. Vanko
Clingen Callow & McLean, LLC
2300 Cabot Drive, Suite 500
Lisle, Illinois 60532
Attorneys for Terry Adamson

*s/ James M. Witz*
James M. Witz