IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AON PLC and AON GROUP, INC., **Plaintiffs,** vs. INFINITE EQUITY, INC., TERRY ADAMSON, JON BURG, DANIEL COLEMAN, ELIZABETH STOUDT, and TYLER EVANS, **Defendants.** | CASE NO. 1:19-cv-07504 Hon. Martha M. Pacold |

**PLAINTIFFS AND CONSENT DEFENDANTS'
STATUS REPORT REGARDING
EXPEDITED DISCOVERY SCHEDULE AND
FORENSIC EXAMINATION**

WHEREAS, on November 13, 2019, Plaintiffs filed a lawsuit against Infinite Equity, Inc., Terry Adamson, Jon Burg, Daniel Coleman, Elizabeth Stoudt, and Tyler Evans in the United States District Court for the Northern District of Illinois in the above-captioned case[1] (the "Action");

WHEREAS, Plaintiffs and Consent Defendants agree, as set forth herein, submit the following status report regarding mutual expedited discovery and a forensic inspection of *MyPerformanceAwards* and *PeerTracker*;

WHEREAS, where disputes remain outstanding, Plaintiffs and Consent Defendants set forth their positions herein for the Court to consider in ruling on an expedited discovery schedule:

---

[1] Burg, Coleman, Stoudt, Evans, and Infinite Equity are referred to herein as the "Consent Defendants."

1. <u>Written Discovery and Document Production</u>.

   a. Plaintiffs and Consent Defendants agree that, as between Plaintiffs and Consent Defendants: (i) Plaintiffs, collectively, shall be limited to 10 interrogatories and 10 requests for production, and (ii) Consent Defendants, collectively, shall be limited to 30 interrogatories and 30 requests for production. Plaintiffs, collectively, shall be limited to 20 requests for admission, and Consent Defendants, collectively, shall be limited to 20 requests for admission.

   b. Plaintiffs and Adamson agree that, as between Plaintiffs and Adamson: (i) Plaintiffs, collectively, shall be limited to 5 interrogatories, 5 requests for production, and 5 requests for admission; and (ii) Adamson shall be limited to 5 interrogatories, 5 requests for production, and 5 requests for admission.

   c. All interrogatories, requests for production, and requests for admission shall be answered individually by each Defendant and each Plaintiff; provided, however, that the Parties may format responses as appropriate.

   d. The parties wish to bring the following dispute to the Court's attention:

   **Plaintiffs' Position:** The parties had always agreed that they shall respond to written discovery requests and complete their respective document productions **within 21 days of receipt of requests**. This was never a disputed issue in all of the parties' discussions. On Monday, February 10, 2020, Plaintiffs served Defendants with written discovery. To date, Consent Defendants have yet to serve any discovery on Plaintiffs. Then, the Friday afternoon this submission was due, Consent Defendants sought for the first time to extend the time they have to respond to written discovery by allowing 21 days from the "submission of this stipulation," thereby allowing Consent Defendants extra time to respond to written discovery. The parties should have the same amount of time to respond to discovery, counted from the date of service.

   **Consent Defendants' Position:** Consent Defendants' proposal still includes a 21-day response period for discovery requests. The parties have not begun expedited discovery. Plaintiffs served discovery *before* the parties had reached any agreements on the scope of expedited discovery, including the number of requests for each party or the date of service of those requests. Consent Defendants merely sought to tie response dates to the submission of a formal governing order.

2. <u>Depositions</u>.

   a. Fact depositions shall be completed on or before **April 20, 2020**. The parties wish to bring the following dispute to the Court's attention:

2

**Plaintiffs' Position**: Plaintiffs propose that Plaintiffs be entitled to ten depositions, collectively, and Consent Defendants be entitled to ten depositions, collectively. Consent Defendants want to limit each side to five depositions each. But, there are six Defendants in this case. If Consent Defendants' position is accepted, Plaintiffs would not be able to depose all of the Defendants in this case. Further, contrary to Consent Defendants' position that Plaintiffs named defendants "who have little or nothing to do with the allegation at issue here," Plaintiffs brought detailed allegations against each of the Consent Defendants, set forth in the over 200 paragraph Complaint, Dkt. 1, describing how they worked in concert together and continue to do so at Infinite Equity, where Burg, Coleman, and Stoudt are all Partners. Although not a Consent Defendant, Adamson is also a key witness. As detailed in the Complaint, Adamson was a key player in discussions with Consent Defendants regarding creating a rival equity services business and the solicitation of Aon employees to leave Aon—and has knowledge of facts central to Aon's likelihood of success on its breach of fiduciary duty and breach of contract claims. As detailed in Aon's motion for temporary restraining order, breach of contract and breach of fiduciary duty are valid claims to support an injunction, and Aon intends to move for a preliminary injunction on this basis. Dkt. 24, 37. As described in Aon's papers, Consent Defendants continue to enjoy the fruits of their unlawful conduct and breaches to Aon's irreparable detriment, and can plainly be enjoined for same. *Id.* Aon does not wish to belabor this point with briefing in this joint status report on these topics, but refers the Court to the extensive briefing already submitted on these issues at Dkt. 24 and Dkt. 37.

Moreover, Plaintiffs filed a multi-count Complaint. There are at least five other former Aon employees who now work for Infinite Equity and are key witnesses in this case. Further, since the filing of the Complaint, Aon has discovered that Infinite Equity is now servicing over 40 Aon clients who are also key witnesses in this case and have evidence directly relevant to the preliminary injunction hearing. This is not a small case, and given the incredible number of relevant and key witnesses, Plaintiffs' position that each side is entitled to, collectively, ten depositions is eminently reasonable.

**Consent Defendants' Position:** Consent Defendants' position is that expedited discovery must be limited to the issues necessary to be addressed at the preliminary injunction hearing - namely, ongoing conduct that could result in irreparable harm to Plaintiffs. Accordingly, Consent Defendants proposed a limit of five (5) depositions for Plaintiffs, collectively, and for Consent Defendants, collectively. Consent Defendants further proposed that if either Plaintiffs or Consent Defendants believe additional depositions are necessary, the parties should meet and confer and seek leave of Court.

Plaintiffs requested that the Consent Defendants, collectively, be able to conduct 10 depositions and Plaintiffs, collectively, be able to conduct 10 depositions. This proposal is far too overbroad and inconsistent with the concept of expedited discovery.

To trump up their claims, Plaintiffs have named a number of defendants who have little or nothing to do with the allegations at issue here. This does not entitle them to additional expedited discovery. Indeed, Plaintiffs have not even demonstrated the necessity of depositions of all *parties*. For example, the knowledge Defendant Adamson has, if any, goes to the underlying merits of Plaintiffs' claims, not the irreparable harm or likelihood of success showings required at a preliminary injunction hearing. Mr. Adamson is only claimed to have knowledge of Consent Defendants' purported breaches of fiduciary and contract duty while employed at Aon. Consent Defendants, however, cannot be enjoined from breaching any past fiduciary duty to Aon – they are no longer employed and thus no longer owe a fiduciary duty that can be the subject of an injunction. *See*, *e.g.*, *Indus. Packaging Supplies, Inc. v. Channell*, No. 18 civ. 165, 2018 WL 2560993, at *4 (N.D. Ill. June 4, 2018)("In Illinois, employees owe fiduciary duties to their employers while they are employed, … but there is no post-employment duty that prevents an employee from competing with his former employer post-employment.") (internal citations omitted). Nor can the Consent Defendants be enjoined from past breaches of contract. Indeed, Mr. Adamson does not work at Infinite Equity and has no knowledge of any ongoing conduct that could possibly be enjoined going forward. Plaintiffs have no justification for such a high number of deponents at this juncture. Additionally, Ms. Stoudt is not subject to any contractual restrictions and Plaintiffs do not allege she took any code.

To the extent Plaintiffs feel the need for additional depositions and discovery, they are free to pursue it following the preliminary injunction hearing. But to attempt to conduct full, wide-ranging discovery in such an abridged timeframe would unduly burden Consent Defendants and abrogate their rights to develop a full evidentiary record. Indeed, Plaintiffs' original expedited discovery motion only sought to depose parties, not additional fact witnesses. *See* Dkt. No. 26.

3. Expert Discovery.

    a. To the extent any Party intends to rely upon expert testimony, the Parties agree that they must make the disclosures required by Fed. R. Civ. P. 26(a)(2) on or before **May 7, 2020**.

    b. The Parties agree that expert depositions shall be completed on or before**, May 21, 2020**. After receipt of expert disclosures, the Parties shall promptly meet and confer to schedule expert depositions.

> **Plaintiffs' Position**: As set forth below, Plaintiffs' position is that expert discovery is necessary prior to a preliminary injunction hearing.
>
> **Consent Defendants' Position:** As set forth below, Consent Defendants' position is that a full expert discovery period is unnecessary prior to a preliminary injunction hearing and will simply delay.

4. Forensic Review of *MyPerformanceAwards* and *PeerTracker*. Plaintiffs propose the following provision governing a forensic review of *MyPerformanceAwards* and *PeerTracker*. Consent Defendants' position is set forth below.

   a. Plaintiffs and Consent Defendants may each retain the services of an independent expert qualified in forensic analysis of source code to conduct forensic analysis of *MyPerformanceAwards* and *PeerTracker*.

   b. Within three (3) business days of entry of this Stipulation, Consent Defendants will produce to Plaintiffs' designated forensic expert all iterations and versions of the *MyPerformanceAwards* source code; the source code control system metadata (revision control system metadata); requirement, design, and test specifications; project plans (including GANT charts) for *MyPerformanceAwards*; and all data contained on project management software for *MyPerformanceAwards* (including JIRA or similar software) (and any username, password, or other access credentials). Within three (3) business days of entry of this Stipulation, Plaintiffs will produce to Consent Defendants' designated forensic inspector the version of the *PeerTracker* source code in place when Tyler Evans resigned his employment with Aon (and any username, password, or other access credentials). The methods of production and confidentiality protections for the exchange of the source code information set forth in this subsection (the "source code material") are described below.

   c. The source code material for *MyPerformanceAwards* and *PeerTracker* may be designated ATTORNEYS-EYES ONLY-SOURCE CODE and afforded all of the protections afforded ATTORNEYS-EYES ONLY materials under the parties' Confidentiality Agreement, except materials marked ATTORNEYS-EYES ONLY-SOURCE CODE may also be disclosed to one party representative for the Consent Defendants and one party representative for Plaintiffs. The party representatives shall be bound by the Confidentiality Agreement in this case, and this Stipulation.

   d. Any source code material produced in discovery shall be made available for inspection, in a format allowing it to be reasonably reviewed and searched. Source code material will be produced through secure means. The receiving party shall maintain all paper copies of any printed portions of the source code material in a secured, locked area. Any paper copies used during a deposition shall be retrieved by the producing party at the end of each day and must not

        be given to or left with a court reporter or any other unauthorized individual. The receiving party shall maintain a record of any individual who has received or reviewed any portion of the source code material in electronic or paper form. At the conclusion of the litigation, the receiving party will return the source code material to the producing party via secure means along with an affidavit by each person who received or reviewed the source code material declaring under oath that they did not retain a copy of any portion of the source code material.

    e. The costs of any forensic inspection of the source code material shall be borne by the Party requesting the inspection.

**Plaintiffs' Position**: Plaintiffs seek all iterations and versions of the *MyPerformanceAwards* source code; the source code control system metadata (sometimes referred to as the revision control system metadata); requirement, design, and test specifications; project plans (including GANT charts) for *MyPerformanceAwards*; and all data contained on project management software for *MyPerformanceAwards* (including JIRA or similar software). Consent Defendants, on the other hand, wish to limit the information provided to the forensic expert to only the *MyPerformanceAwards* source code.

Consent Defendants' proposal would not provide the forensic expert with the information that he needs in order to perform his analysis. Production of just the *MyPerformanceAwards* source code is a mere snapshot in time, and specifically a time long after Consent Defendants gained access to *PeerTracker*. It does not provide the expert with the information he needs to determine if the source code was created using Aon's proprietary *PeerTracker* code—which is the very point of the forensic review. In order to evaluate this, the forensic expert needs to review all iterations of the source code, starting at the beginning. The source code control system metadata allows him to determine how the source code originated, what was changed, by whom, and how it was changed over time. This allows the expert to opine as to whether the source code as it originally existed, or as it exists in its current form, or anywhere in between, utilized Aon's confidential, proprietary, and trade secret *PeerTracker* code.

Moreover, requirement, design, and test specifications; project plans (including GANT charts); and all data contained on project management software (including JIRA or similar software) are other sources of data and evidence the forensic expert commonly and routinely reviews during a source code comparison analysis. These sources of evidence and information will be used by the forensic expert to inform his opinion as to whether *MyPerformanceAwards* utilized Aon's proprietary, confidential and trade secret information.

All of the above information is necessary to decide Plaintiffs' anticipated motion for a preliminary injunction. Consent Defendants' claim that Plaintiffs will only be harmed going forward if the "current" code of *MyPerformanceAwards* is based on the *PeerTracker* source code. This could not be farther from the truth. If the

*MyPerformanceAwards* code was ever based on *PeerTracker,* this is a trade secret violation. This is exactly why all iterations and metadata are required.

Further, Consent Defendants claim that because the motion for expedited discovery mentioned only "source code" that Plaintiffs should be precluded from obtaining the information they need to complete the forensic analysis. The motion for expedited discovery did seek all "copies or iterations of the code to *MyPerformanceAwards*." Dkt. 26-1, ¶ 4. Further, the motion was filed before Plaintiffs were able to consult with their retained expert, who has since advised additional materials that should be reviewed in the analysis. This is also word play. Parties frequently seek "documents" in discovery, which means all varieties of information (emails, text messages, etc.).

In addition, Consent Defendants cite an "imbalance" in the information to be provided. To the contrary, Plaintiffs' proposal is narrowly tailored to the information needed for Plaintiffs' anticipated motion for preliminary injunction. The information required for the forensic analysis is different as between the parties. Aon did not take any proprietary information concerning *MyPerformanceAwards* that would necessitate production of *a decade's worth* of code, metadata, specifications, project plans, and data from project management software relating to *PeerTracker*. This information, as it pertains to *PeerTracker*, is completely irrelevant. But, as set forth above, this information is highly relevant for *MyPerformanceAwards* and the contemplated forensic analysis (and far less burdensome, given that *MyPerformanceAwards* has been in existence for less than a year). If Consent Defendants have nothing to hide this shouldn't be an issue.

Indeed, Consent Defendants have consistently taken the position that they have nothing to hide. It is perplexing that they would fight to withhold this information from the forensic expert. Further, Consent Defendants have repeatedly taken the position that this process is supposed to be expedited. By providing this information to the expert sooner, rather than later in written discovery and document production (as this information is no doubt plainly relevant to the issues in this case), the expert will have time to review the materials and render an opinion on an expedited basis. Again, *MyPerformanceAwards* has been on the market for less than a year, so the production of this information is neither burdensome nor voluminous.

Last, Consent Defendants' proposal to use one neutral examiner is unacceptable for at least three reasons. First, this was never the parties' agreement or understanding. Plaintiffs previously agreed with Consent Defendants' prior counsel, as part of negotiations over the Consent Order, that each side may retain their own experts for the forensic examination. Plaintiffs have been operating accordingly. Plaintiffs would be happy to submit emails memorializing this agreement to the Court, upon request. Second, this case will involve a lot of forensic evidence. Plaintiffs wish to, and are entitled to, obtain an expert of their choosing (and not one they have to "mutually agree" to with Consent Defendants), who will, in addition to rendering an expert opinion, also be available to discuss the forensic evidence with counsel on a privileged basis. Plaintiffs should not be forced to "share" an expert with Consent Defendants. Third, under Plaintiffs' proposed schedule, Consent Defendants should provide the forensic expert

7

with the necessary documents for him to conduct his examination within three business days of entry of the expedited schedule. Thus, there is no delay.

**Consent Defendants' Position:** Consent Defendants contend that expedited discovery must be limited to information necessary to decide Plaintiffs' anticipated application for a preliminary injunction. The relevant part of that analysis is whether the source code for MyPerformanceAwards is based on PeerTracker's source code. Plaintiffs will only be harmed on a going-forward basis if the current code for MyPerformanceAwards is based on PeerTracker's code. This analysis can be accomplished with a simple, side-by-side comparison of the two codes by one neutral, mutually agreed-upon expert. Indeed, in Plaintiffs' motion for expedited discovery, Plaintiffs *only* requested a source code information and did not request all of the voluminous and burdensome information set forth above. *See* Dkt. No. 26, at pp. 3, 9.

Consent Defendants therefore propose that the parties provide the current source codes of both programs to a single, mutually agreed-upon expert in advance of the preliminary injunction hearing. This proposal will streamline expert discovery and avoid the need for full-blown warring experts, reports and depositions prior to a preliminary injunction hearing (which would be nearly impossible to accomplish and would almost certainly delay a preliminary injunction hearing further). Tellingly, Plaintiffs did *not* include a request for expert discovery in their original motion for expedited discovery. *See* Dkt. No. 26. And it bears noting that, if Plaintiffs' request for the above information is granted, and Plaintiffs are not required to provide similar information from PeerTracker to Consent Defendants, Plaintiffs' expert will have approximately 10 years of information from PeerTracker (dating back to its inception) from which he may cherry-pick his analysis, while Consent Defendants will only be limited to the analyzing the current code of PeerTracker compared to MyPerformanceAwards. This imbalanced exchange will prejudice Defendants' ability to mount a full defense. Although Consent Defendants disagree that this information is relevant and maintain that exchange of this information will unnecessarily expand and complicate expedited discovery, if the Court grants Plaintiffs' request, Consent Defendants cannot be hamstrung by not having the same information from Plaintiffs for their experts to analyze.

Consent Defendants have nothing to hide. If Plaintiffs wish to explore the greater context surrounding the development of MyPerformanceAwards, they can seek it during the full discovery process (and Consent Defendants reserve the right to challenge that request). But it pertains to the underlying factual merit of their claims, not the showing of irreparable harm and likelihood of success on the merits required at the preliminary injunction stage. Consent Defendants would then, at that time, seek similar information about PeerTracker from its inception to date. It is at that point, under normal time constraints, that the parties can explore the broader context surrounding the issue. Any informal discussions with Consent Defendants' prior counsel are irrelevant. Plainly, no agreement was reached on this point. Consent Defendants instead ask for Plaintiffs to focus on limiting discovery, given the posture of the case and what will be appropriate for a preliminary injunction hearing. The plain language of the Consent Order only requires

"a forensic inspection" of the two programs. Dkt. No. 41. The parties could have chosen to incorporate a requirement of two experts into the Consent Order, but they did not.

5. <u>Preliminary Injunction</u>. The parties agree to the following briefing schedule for Plaintiffs' anticipated motion for a preliminary injunction.

   a. Plaintiffs' moving brief: **June 4, 2020.**

   b. Consent Defendants' opposition: **June 18, 2020**.

   c. Plaintiffs' reply**: June 25, 2020**.

   d. The parties agree to request a hearing date, subject to the Court's availability, on or before **July 10, 2020**.

   **Plaintiffs' Position**: Plaintiffs are trying to be reasonable with the proposed schedule. Consent Defendants insisted on 30 interrogatories and 30 document requests. There are six defendants. Consent Defendants admit to taking over 40 Aon clients. This is not a small case, and Plaintiffs are trying to be realistic. Further, Plaintiffs have been ready to start discovery for weeks, and only the change of Consent Defendants' counsel has delayed the start of discovery. Plaintiffs reserve the right to move for an extension of the Consent Order.

   **Consent Defendants' Position:** <u>Consent</u> Defendants have maintained that the extensive scope of discovery proposed by Plaintiffs is unnecessary at this juncture and were Plaintiffs to limit discovery only to issue relevant to the preliminary injunction hearing, there is no reason why relevant discovery could not be completed well in advance of the expiration of the Consent Order. Nevertheless, in the interest of compromise, Consent Defendants are willing to agree to the schedule above but emphasize that Defendants do not consent and vehemently oppose *any* extension of the Consent Order, which is overly broad and unduly onerous to Consent Defendants, entered in this action on January 29, 2020, which expires on April 28, 2020. Indeed, Defendants fully expect that, if expedited discovery extends beyond April 28, 2020, there will no injunctive relief in place for the extended period of discovery. Consent Defendants will oppose any application to extend by Plaintiffs to extend that relief.

   Contrary to Plaintiffs' assertions, Consent Defendants' change of counsel has done nothing to delay the start of discovery. In fact, Consent Defendants' new counsel contacted Plaintiffs' counsel the very day they appeared in this case and discussions related to expedited discovery began immediately. The only thing causing delay here is Plaintiffs' refusal to limit the scope of expedited discovery in a reasonable manner.

9

6. Plaintiffs and Consent Defendants reserve the right to seek additional discovery after the expiration of the Consent Order.

| | |
|---|---|
| *s/ James M. Witz* <br> James M. Witz <br> jwitz@littler.com <br> LITTLER MENDELSON, P.C. <br> 321 N. Clark Street, Suite 1000 <br> Chicago, Illinois 60654 <br> (312) 372-5520 <br><br> Jessica F. Pizzutelli (admitted *pro hac*) <br> jpizzutelli@littler.com <br> LITTLER MENDELSON, P.C. <br> 375 Woodcliff Drive, Suite 2D <br> Fairport, New York 14450 <br> (585) 203-3400 <br><br> ATTORNEYS FOR AON PLC and AON GROUP, INC. | *s/ Jeannil Boji* <br> Jeannil Boji <br> JBoji@perkinscoie.com <br> Perkins Coie LLP <br> 131 S. Dearborn Street, Suite 1700 <br> Chicago, Illinois 60603 <br> (312) 324-8419 <br><br> ATTORNEYS FOR JON BURG, DANIEL COLEMAN, ELIZABETH STOUDT, TYLER EVANS, and INFINITE EQUITY, INC. |
| | |

SO ORDERED
This the ___ day of February, 2020.

_____
Hon. Martha M. Pacold