# Exhibit A

**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| AON PLC and AON GROUP, INC., <br><br>                   Plaintiffs, <br><br>          v. <br><br> INFINITE EQUITY, INC., TERRY ADAMSON, JON BURG, DANIEL COLEMAN, ELIZABETH STOUDT, and TYLER EVANS, <br><br>                   Defendants. | Case No. 1:19-cv-07504 <br><br> Honorable John F. Kness <br><br> Magistrate Judge Sunil R. Harjani |

**DEFENDANTS INFINITE EQUITY, INC., JON BURG, DANIEL COLEMAN,
ELIZABETH STOUDT AND TYLER EVANS' SUR-REPLY TO PLAINTIFFS'
MOTION FOR CLARIFICATION REGARDING EXTENSION OF
CONSENT ORDER DEADLINE**

Defendants Infinite Equity, Inc. ("Infinite Equity"), Jon Burg, Daniel Coleman, Elizabeth Stoudt, and Tyler Evans ("Defendants") by and through their attorneys, Perkins Coie LLP, submit this sur-reply to Plaintiffs Aon plc and Aon Group, Inc's ("Aon") reply [Dkt. No. 93] (the "Reply") in support of their motion for clarification "regarding the applicability of Second Amended General Order 20-0012 [Dkt. 78] to the Consent Order in this case [Dkt. 41], and specifically a ruling from the Court that the deadline for the Consent Order to expire is "extended" by 49 days, up to and including June 16, 2020," (hereinafter, the "Motion").

Plaintiffs' procedural gamesmanship is on full display in the Reply, a 13-page brief — notably, over *double* the length of the six-page Motion — that bears little resemblance to the original Motion. In an apparent attempt to mislead the Court and deprive Defendants of the opportunity to respond to the substance of their arguments, Plaintiffs: (1) improperly advance new legal arguments and incorporate an entirely new section of (misleading and unsupported) factual background for the first time in the Reply; and (2) litter the Reply with blatant mischaracterizations

of case holdings and unsupported factual misrepresentations. But fundamentally, the Reply, which transparently attempts to litigate the factual merits of a preliminary injunction motion without an evidentiary hearing, merely bolsters the arguments raised in Defendants' Response. Although Defendants do not wish to inundate the Court with an additional lengthy submission (and have limited this sur-reply accordingly), Plaintiffs leave Defendants with no choice but to correct the record and address Plaintiffs' new assertions as set forth below.

## I. PLAINTIFFS ARE NOT ENTITLED TO SUBJECT DEFENDANTS TO INDEFINITE OR EXTENDED INJUNCTIVE RELIEF.[1]

Preliminarily, Plaintiffs argue that temporary restraining order ("TRO") standards should not apply to the Consent Order, but even if they do, "the extension of the deadline of the expiration is still permissible." Dkt. No. 93, at 9. Plaintiffs are wrong.

### A. *The Law Surrounding TROs Underscores That the Consent Order Cannot Be "Extended."*

First, if the law related to TROs offers an imperfect analogy, it is only because Plaintiffs have not actually demonstrated the need for a TRO (or preliminary injunction) *on the merits*.[2] Plaintiffs have not proven or won *anything*, but nevertheless have been given an agreed-injunction time period more than *three times* the maximum length of a TRO during which they could have conducted expedited discovery. Rather than expediently utilizing that time, however, Plaintiffs attempt, at every opportunity, to expand the breadth of discovery as much as possible and well

---

[1] As noted in the Response, contrary to Plaintiffs contention, the court in *Servco Ins. Servs. Wash., LLC v. Soroka*, No. 20-cv-0313RSL, 2020 U.S. Dist. LEXIS 42808 (W.D. Wash. Mar. 11, 2020) did not hold "that the expiration of a Court order is a deadline." Dkt. No. 93, at 7. The court used the term "deadline" in passing and did not analyze the meaning of the term. More importantly, by relying heavily on *Servco Ins. Servs. Wash., LLC*, in which the court analyzed a TRO, Plaintiffs tacitly admit that the case law regarding TROs is useful in analyzing the legal ramifications of "extending" the Consent Order.

[2] Notably, Plaintiffs have never proven their burden for injunctive relief in any context, whether for a TRO or a preliminary injunction. Indeed, Plaintiffs have not moved for a preliminary injunction; nor have Plaintiffs attempted to schedule a preliminary injunction (despite being told several times by Magistrate Judge Harjani that any preliminary injunction hearing would hinge on the Court's limited availability to schedule such a hearing).

beyond what is needed (or is customary) in advance of a preliminary injunction hearing,[3] and continue to employ delay tactics rather than quickly move the case to minimize the time between the expiration of the Consent Order and the preliminary injunction hearing.[4] Notably, Plaintiffs have chosen to ignore Defendants' *numerous* overtures to discuss an expedited schedule to address Plaintiffs' supposed concerns that the Second Amended General Order would extend the preliminary injunction hearing a few weeks beyond the date Plaintiffs contemplated. Instead, Plaintiffs seek to subject Defendants to indefinite injunctive relief without litigating their supposed need for a preliminary injunction under the guise of a request for "clarification."

Plaintiffs miss the larger point that extending the Consent Order without Defendants' consent will, in effect, convert the Consent Order to an injunction, which are subject to limitations. Contrary to Plaintiffs' arguments, the fact that TROs may occasionally be obtained *ex parte* has no bearing on whether the case law related to TROs is instructive here. As Plaintiffs surely know, TROs are frequently litigated with notice and all parties present, and Plaintiffs do not meaningfully explain why this distinction renders the analysis in the cases cited by Defendants inapplicable. Indeed, although Plaintiffs quote from *Weintraub v. Hanrahan*, 435 F.2d 461, 462 (7th Cir. 1970) to suggest that an order must have "the accouterments of" a TRO to be treated as a TRO, they do not explain what that means in context. In *Weintraub*, the Seventh Circuit found that, because

---

[3] For example, and over Defendants' objections that discovery should be streamlined as to only what is necessary prior to a preliminary injunction hearing, Plaintiffs originally sought 10 depositions (which Judge Harjani limited to seven depositions), expert discovery with multiple experts, and to propound discovery requests on the full scope of the allegations in the Complaint. *See* Dkt. Nos. 55, 67. Indeed, Plaintiffs seek what can only be considered expansive discovery even outside the context of expedited discovery.

[4] For example, after requesting extensions of time to respond to Defendants' motions to dismiss, Plaintiffs, for the first time, raised the prospect of amending their complaint nearly two months after Defendants filed their motions to dismiss on February 24, 2020. Moreover, at every step, it has been Plaintiffs, not Defendants, who have requested that discovery deadlines be pushed back. Plaintiffs requested that the deadline to respond to initial requests and to produce documents be extended; Plaintiffs have produced no responses or documents; Plaintiffs have yet to notice or try to arrange depositions. Plaintiffs have completely failed to expediently obtain discovery they claim they need prior to a preliminary injunction hearing.

injunctive relief ordered by the lower court exceeded the *limited parameters* of injunctive relief permitted in a TRO, the order could be appealed. *See id*. This principle, of course, reinforces Defendants' argument in the Response — namely, if the Consent Order is extended beyond its original parameters *without consent,* Defendants would, in effect, be subject to an appealable preliminary injunction. *Coca-Cola Co. v. Alma-Leo U.S.A., Inc.*, 719 F. Supp. 725, 727 (N.D. Ill. 1989), also cited by Plaintiffs, further supports this point. Indeed, Plaintiffs omit that in *Coca-Cola Co.*, while the court debated whether the order was properly characterized as a TRO or a preliminary injunction because there was no *ex parte* application, it nonetheless: (1) limited the pendency of its order to twenty days in accordance with Fed. R. Civ. P. 65(b) (i.e., TRO standards) because no evidentiary hearing had been held; and (2) scheduled a quick preliminary injunction hearing. *See id*.

Furthermore, in *Autotech Techs. Ltd. P'ship v. Automationdirect.Com, Inc.*, No. 05 C 5488, 2006 WL 1304949, at *4 (N.D. Ill. May 10, 2006), the court drew distinctions between consent orders and other orders that are not relevant here. There, the court considered whether a party had violated the terms of a consent decree and should therefore be held in contempt, a scenario for which there was applicable controlling authority that had been decided in the context of a consent order. *See id*. Here, by contrast, Plaintiffs cite to no such authority (to support *their* Motion, for which *they* bear the burden). Indeed, despite claiming TRO authority does not apply to the Consent Order, Plaintiffs do not cite a single case that justifies administratively converting a consent order to a preliminary injunction without providing the non-moving party with an opportunity to present evidence and briefing on the merits in its defense. There is none.

B.     *"Extending" the Consent Order Is Not Permissible.*

Moreover, as purported support for the proposition that "expiration of the deadline is still

4

permissible," Plaintiffs cite two cases: (1) *Iron Maiden Holdings, Ltd. v. Partnerships and Unincorporated Associations Identified on Schedule "A,"* No. 20-cv-1548 (N.D. Ill. Mar. 18, 2020) (Dow, J.); and (2) *Weaver v. Whitmer*, No. 20-10519, 2020 WL 1284759 (E.D. Mich. Mar. 17, 2020). But neither of these cases, nor any other cases cited by Plaintiffs, permit the imposition of indefinite or extended injunctive relief without requiring that the plaintiff meet their burden of proof for an injunction to issues, or affording the defendant an opportunity to respond to the merits of an injunction motion. [5]

Plaintiffs materially misrepresent Judge Dow's order in *Iron Maiden Holdings*. Plaintiffs selectively quote to make it appear the court extended the pendency of the TRO indefinitely due to the COVID-19 crisis. It did not. Instead, following a *fully-litigated* TRO and the issuance of the Northern District of Illinois' First Amended General Order, the court issued a separate order that extended the TRO for an additional 14 days (for a total of 28 days)[6] in strict *observance of the parameters of Fed. R. Civ. P. 65(b) and applicable TRO case law* (as detailed in Defendants' Response). The complete text order, which did not reference the First Amended General Order, was: "On the Court's own motion and in view of the emergency created by the COVID-19 crisis, the TRO entered on 3/10/2020 is extended by 14 days to and including 4/7/2020." Thus, *Iron*

---

[5] Aon attempts to rely on the rote legalese phrase that the parties included in the Consent Order which states that it would remain in place for 90 days "or until further order of this Court." Dkt. No. 93, at 4. This is language that litigants routinely include in any order they are requesting to be entered by a court, or even in motions requesting relief. Aon, however, with no citation to the record at all, attempts to recharacterize this standard legal language, claiming that it somehow means that the parties contemplated that the Court could, without the consent of both sides, simply extend the onerous Consent Order. This could not be further from the truth. Defendants never contemplated that the Consent Order would be extended and made that position clear. In fact, *Defendants* added this language with the understanding that the Consent Order could be terminated earlier if a settlement were reached. Indeed, Aon misleadingly claimed that its goal was in fact to reach such a settlement, and yet never engaged in such talks. It is clear now that Aon's only goal was to keep Infinite Equity out of the market during the busiest months for the industry.

[6] Plaintiffs again misstate the law that the Court has "unilateral authority to extend a TRO …by at least 28 days for good cause." Dkt. No. 93, at 9. As discussed in Defendants' Response, a court may only extend a TRO for 14 days under Fed. R. Civ. P 65(b)(2), for a total pendency of 28 days.

5

*Maiden Holdings* does not stand for the proposition that the General Orders related to the COVID-19 crisis would automatically extend the Consent Order at all, much less for a period of 49 days or indefinitely. Rather, it supports Defendants' position that the Northern District of Illinois' General Orders does not "extend" the pendency of orders for injunctive relief. Nor does *Iron Maiden Holdings* support the notion that the COVID-19 crisis provides courts with license to abandon the limits on injunctive relief articulated in the Federal Rules, even in the context of a fully-litigated TRO.

Plaintiffs similarly misrepresent the holding in *Weaver,* an out-of-circuit district court case. Contrary to Plaintiffs' assertion, *Weaver* did not "consider[] a materially identical issue" as here. Rather, the decision in *Weaver* turned on the unique factual circumstances present there. Specifically, the court found that the defendants, including the Governor of Michigan and other state parties, were "not likely to be prejudiced by [an] extension" of a TRO preventing them from evicting a *pro se* plaintiff from his home. The stakes of the dispute in *Weaver*, therefore, were almost nonexistent for the state parties (which had not even appeared in the case) but inordinately high for the *pro se* individual. Here, by contrast, Defendants will suffer substantial prejudice if the Consent Order is "extended." Furthermore, the court in *Weaver* did not analyze any case law or the Federal Rules of Civil Procedure. Moreover, unlike in *Weaver,* there is no imminent emergency caused by the COVID-19 crisis at issue here.[7] Accordingly, *Weaver's* analysis is not persuasive on this point.

---

[7] Notably, we are still three months away from the *earliest* expected date for preliminary injunction hearing. Plaintiffs *expected* that the Consent Order would expire on April 28, 2020, and they themselves proposed a preliminary injunction hearing date of "on or after July 13, 2020." Nothing about the General Orders or the COVID-19 crisis suddenly creates an emergency of irreparable harm if the Consent Order is not "extended"; Plaintiffs *themselves* chose (and in fact insisted over Defendants' objections) that the Consent Order would lapse *at least* two and half months before the *earliest* date a preliminary injunction hearing could be scheduled, and have not shown (and cannot show) that they would be irreparably harmed if the preliminary injunction hearing occurs a mere few weeks after that expected earliest date.

6

## II. IN THE REPLY, PLAINTIFFS IMPROPERLY ATTEMPT TO LITIGATE THE MERITS OF A PRELIMINARY INJUNCTION MOTION.

As a further demonstration of Plaintiffs' attempt to subject to Defendants to a preliminary injunction without affording Defendants the opportunity to present evidence or substantive arguments in their defense, Plaintiffs cite to a series of preliminary injunction decisions to support the notion that they will be prejudiced if the Consent Order is not "extended." Plaintiffs' citation to these cases, however, is an *admission* that the Consent Order is, in reality, an onerous injunction against Defendants. The Consent Order far exceeds any injunctive relief Plaintiffs could have obtained vis-à-vis a TRO: it, among other things, subjects Elizabeth Stoudt, Tyler Evans and Infinite Equity to non-solicitation obligations to which they never agreed.

It is still nearly three months from the earliest date Plaintiffs *themselves* previously proposed and agreed that the preliminary injunction hearing would take place (based on the Consent Order expiring on April 28th as expected). *See* Lepore Decl. Ex. A (March 13, 2020 email proposing that the preliminary injunction hearing would take place "on or after July 13, 2020."). This affords Plaintiffs plenty of time (and, as Judge Harjani also pointed out, significantly more time than they would have otherwise had during the maximum pendency of a TRO, which, even under a best case scenario for Plaintiffs, could not have gone beyond 28 days) to conduct appropriately streamlined discovery relevant to the preliminary injunction hearing prior to such date. Instead, Plaintiffs seek to conduct voluminous amounts of discovery at a pace that suits them, while seeking to "extend" the Consent Order.

Again., Plaintiffs, who *voluntarily* agreed to litigate *for months* without the protections of the Consent Order and never attempted to set a preliminary injunction hearing date with the Court (so as to ensure a date as close as possible to July 13, 2020), are not genuinely concerned about "prejudice" or irreparable harm that would supposedly occur should the preliminary injunction

7

hearing take place a few weeks later than expected. But if they were, the General Orders permits them to submit an emergency motion, which was the same remedy available to Plaintiffs (at their own suggestion) prior to the issuance of the General Orders if "exigent" circumstances such as the mass exodus of dozens and dozens of clients occurred because of Defendants' wrongdoing. Nevertheless, if the Court deems it appropriate to grant Plaintiffs some form of relief (and for the reasons set forth above, it should not), the Court should expedite the preliminary injunction hearing to a date on or near Plaintiffs' previously proposed July 13, 2020 date and order that the Plaintiffs streamline their discovery accordingly.

## CONCLUSION

For all the reasons discussed above, the Motion should be denied its entirety and the Consent Order expiration date should remain in place.

Dated: April 22, 2020         Respectfully Submitted,

                 **DEFENDANTS JON BURG, DANIEL COLEMAN, ELIZABETH STOUDT, TYLER EVANS AND INFINITE EQUITY, INC.**

By:    s/ Jeannil D. Boji
       One of Its Attorneys

       Jeannil D. Boji
       Christopher R. Lepore
       PERKINS COIE LLP
       131 S. Dearborn
       Suite 1700
       Chicago, IL 60603
       Tel: (312) 324-8400
       Fax: (312) 324-9400
       jboji@perkinscoie.com
       clepore@perkinscoie.com

## **CERTIFICATE OF SERVICE**

I, Jeannil D. Boji, certify that on April 22, 2020, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the parties listed below by operation of the Court's electronic filing system. Parties may also access this filing through the Court's ECF system.

By: /s/ Jeannil D. Boji