IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AON PLC and AON GROUP, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 19 C 7504 |
| | ) | |
| v. | ) | Judge John F. Kness |
| | ) | |
| INFINITE EQUITY, INC., TERRY ADAMSON, JON BURG, DANIEL COLEMAN, ELIZABETH STOUDT, and TYLER EVANS, | ) ) ) ) ) | Mag. Judge Sunil R. Harjani |
| | ) | |
| Defendants. | ) | |

## ORDER

The motion of Plaintiffs Aon plc and Aon Group, Inc. (Dkt. 80) for an order extending by 49 days the expiration of the existing Consent Order (Dkt. 41) is denied. If Plaintiffs intend to seek preliminary injunctive relief, they must file an appropriate motion. Under the authority of Local Rule 72.1 and Internal Operating Procedure 14 of the Northern District of Illinois, the referral to the assigned Magistrate Judge (Dkt. 39) is expanded to include a request that he prepare a Report and Recommendation on any motion for a preliminary injunction. If Plaintiffs intend to seek preliminary injunctive relief on an emergency basis, Plaintiffs should both review the procedures set forth in Second Amended General Order 20-0012 and consult with Magistrate Judge Harjani before filing any emergency motion. Defendants' motion for leave to file a sur-reply (Dkt. 94) is denied. See accompanying Statement for details.

## STATEMENT

### I.  BACKGROUND

*A.  Origin of the Lawsuit*

As alleged in the Complaint, this case concerns the resignations in 2019 of certain individuals who apparently worked in some capacity for, or were otherwise affiliated with, the "Aon Equity Services" component (which might be a trade name; the record is unclear) of Plaintiffs Aon plc and Aon Group, Inc. (collectively, "Aon" or

"Plaintiffs") (*see* Dkt. 1 (Compl.), ¶¶17-22.)[1] Under the Aon Equity Services name, Plaintiffs provide professional consulting and other services and products relating to "equity valuation services, design of long-term incentive based programs and employee stock purchase plans, and proprietary tools to track equity compensation metrics." (*Id.*, ¶18.)

Following their resignations from Aon, the individual Defendants became affiliated with Defendant Infinite Equity, Inc. in or around July 2019. (*Id.*, ¶¶10-12.) According to Plaintiffs, Defendants are now engaged in a course of competition for Plaintiffs' clients by misappropriating Plaintiffs' confidential information and trade secrets in violation of various provisions of federal and state law, as well as certain contractual obligations. Plaintiffs assert causes of action against various Defendants for misappropriation of trade secrets under the Federal Defend Trade Secrets Act (Count I) and the Illinois Trade Secrets Act (Count II); breach of contract (Count III); breach of fiduciary duty (Count IV); tortious interference with contract (Count V); tortious interference with prospective economic advantage (Count VI); and unjust enrichment (Count VII). (*Id.*, ¶¶148-207.)

### B. *Initial Court Proceedings and Consent Order*

Plaintiffs commenced this action on November 13, 2019. On January 2, 2020, or roughly six weeks after filing their Verified Complaint, Plaintiffs moved for a temporary restraining order on the basis that Defendants' "unlawful activities" had "accelerated." (Dkt. 23, ¶12.) Ultimately, however, the Court never held a hearing on the merits of Plaintiffs' motion for preliminary injunctive relief because the Parties "advised the Court [on January 27, 2020] that they have reached an agreement regarding the motion for temporary restraining order." (Dkt. 38.) That agreement was reflected in the written "Consent Order" that is now the subject of Plaintiffs' Motion for Clarification.

Entered on January 29, 2020 by District Judge Martha M. Pacold (Dkt. 41),[2] the Consent Order's terms reflect that the Order "will remain in place for 90 days from the date of entry . . . , or until further order of this Court." (Dkt. 41, ¶8.) It is uncontested by the Parties that the 90-day specified duration was the result of a negotiated agreement, as Plaintiffs initially sought a 120-day term for the Consent Order. (Dkt. 85-1; Dkt. 93, p.4.) According to the recitals of the Consent Order, the Parties intended that the Consent Order was to "remain in place . . . while Plaintiffs and Consent Defendants complete mutual expedited discovery and a forensic

---

[1] For purposes of this Statement only, the Court has drawn from and assumed the truth of Plaintiffs' allegations. Moreover, due to the need to rule quickly on Plaintiffs' Motion for Clarification, the Statement provides only a brief summary of the operative allegations and procedural history of this case. Familiarity of the Parties with the full record is assumed.

[2] This case was reassigned to District Judge John F. Kness on February 28, 2020 (Dkt. 69.)

inspection of [the competing software platforms] MyPerformanceAwards [operated by Defendant Infinite Equity] and PeerTracker [operated by Plaintiffs]. . . ." (Dkt. 41, p.2.)

Other provisions of the Consent Order reflected the Parties' agreement on how they would conduct their commercial activities vis-à-vis each other during the pendency of the Consent Order. In short, the Consent Order enjoined Defendants from soliciting Plaintiffs' employees to work for and with Defendants; using Plaintiffs' trade secrets to the benefit of Defendants; and from "directly or indirectly accepting, engaging in, servicing or performing any business of the same type or kind as the business performed by [Plaintiffs] from or with respect to [certain current clients of Plaintiffs]." (Dkt. 41, ¶6.)

### C.     *Proceedings Before the Magistrate Judge*

At around the same time it entered the Consent Order, the Court entered a referral to Magistrate Judge Harjani for the purpose of supervising discovery and setting discovery deadlines. (Dkt. 39.) Magistrate Judge Harjani promptly began holding a series of hearings with the Parties for the purpose of setting an expedited discovery schedule, the intent of which (all agree on this much) was to develop a sufficient factual record for the Court to conduct an evidentiary hearing on Plaintiffs' anticipated motion for preliminary injunction.

Indeed, the discovery scheduled noted above was reduced to a scheduling order that Magistrate Judge Harjani entered on February 25, 2020. (Dkt. 67.) Among other provisions, the scheduling order set various deadlines by which certain discovery steps had to be completed; set the types and extent of that discovery; and the conditions under which certain sensitive material was to be exchanged. (*Id*.) In addition, the scheduling order set the following briefing schedule on 'Plaintiffs' anticipated motion for a preliminary injunction: a. Plaintiffs' moving brief: May 22, 2020[;] b. Consent Defendants' opposition: June 12, 2020[;] c. Plaintiffs' reply: June 22, 2020[.]" (*Id*., ¶ 5 (emphasis deleted).) Finally, the scheduling order reflected that the parties "agree to request a [preliminary injunction] hearing date, subject to the Court's availability, on or after **June 22, 2020**." (*Id*. (emphasis in original).)

As well as setting a briefing schedule on the anticipated preliminary injunction motion, the scheduling order also noted the Court's expectation that there would be a gap between the expiration of the Consent Order and a preliminary injunction hearing:

> During the time period after the Consent Order expires, and before the preliminary injunction hearing, any issues that arise as a result of the expiration of the Consent Order will be addressed at the preliminary injunction hearing. The expectation is that Plaintiff will not move the

3

Court for a temporary restraining order during this time, although they reserve the right to do so if unexpected exigent circumstances arise. This is because the Court has not closed fact and expert discovery before the expiration of the Consent Order on the representation that Plaintiff was unable to complete the fact and expert discovery for purposes of the preliminary injunction hearing prior to the expiration of the Consent Order.

(Dkt. 67, ¶ 6.)

This gap between the expiration of the Consent Order and the preliminary anticipated injunction hearing is the subject of dispute between the Parties; or, at least, the cause and significance of that gap is disputed. Regardless, the record reflects that Plaintiffs sought additional time to conduct discovery in full awareness of the possibility (even likelihood) that the Consent Order would expire before any hearing on Plaintiffs' anticipated preliminary injunction motion. (*See* Dkt. 67, ¶ 6; Dkt. 85-2, 2/19/20 Hrg. Tr. at 16-17 (Plaintiffs' counsel: "I mean, my suggestion might be that we would be willing to push out the injunction date a few weeks after the expiration and just deal with whatever we deal with. If they take clients or try to take clients during that time period, you know, we'll introduce it into evidence at the injunction hearing. But that just may be something that we have to do in order to get everything done in a reasonable time frame").)

### D. *Second Amended General Order 20-0012*

Following the events summarized above, of course, the COVID-19 public health developed rapidly and resulted in the interruption of normal court operations in the Northern District of Illinois. In an effort to "protect the public health and welfare," Chief Judge Rebecca R. Pallmeyer entered Second Amended General Order 20-0012 on March 30, 2020 (the "Second Amended Order").

Among other provisions, the Second Amended Order (which followed Amended General Order 20-0012, entered on March 17, 2020) extended by 28 days "all deadlines in civil cases . . . by an additional 28 days [on top of the 21-day extension provided under Amended General Order 20-0012]." (Second Am. Order, ¶2.) These extensions are "subject to the following exceptions," including that the "presiding judge, on a case-by-case basis and for good cause, may extend, shorten, or revoke the 21-day extension granted by Amended General Order 20-0012 and/or the 28-day extension granted by this Second Amended General Order." (*Id.*, ¶2(c).) In addition, the Second Amended Order explained that the Order "does not affect the authority of judges to enter orders in any civil or criminal cases." (*Id.*, ¶13.)

### E. *Motion for Clarification*

Following entry of the General Orders described above, Plaintiffs filed the Motion for Clarification that is the subject of this Order and Statement. In their Motion, Plaintiffs contend that the "deadline" for the expiration of the Consent Order "was extended by virtue of the Second Amended General Order." (Dkt. 80, ¶6.) Plaintiffs also represent that, during a telephone conference on April 2, 2020, Defendants' counsel agreed that "all deadlines in the case were extended by the Second Amended General Order *except the Consent Order*, which they claimed still expires on the original deadline of April 28, 2020." (*Id*.) Although Plaintiffs style their motion as one seeking clarification, Plaintiffs in effect ask the Court to order "that the deadline for the expiration of the Consent Order . . . is extended by 49 days" under the COVID-19 related General Orders. Accordingly, the Court construe the Motion for Clarification as a request to extend the expiration of the Consent Order by 49 days. Defendants oppose the motion.

## II. ANALYSIS

Despite the lengthy background set out above, and the extensive (and capable) briefing provided by counsel for all Parties (which the Court has reviewed), this dispute fundamentally concerns a question of semantics: is the durational language of the Consent Order—declaring that the Order "will remain in place for 90 days"—a "deadline" subject to the COVID-19 related General Orders of the Northern District of Illinois? Based on the ordinary meaning and usage of the word "deadline," the Court finds that the ending date of the Consent Order is not a deadline subject to automatic extension under the relevant General Orders. This finding is buttressed by the equitable and due process concerns that would inhere in any order effectively imposing injunctive relief (1) based on a "consent" order to which Defendants no longer consent, and (2) in the absence of a genuine adversarial hearing. Given these findings, as explained more fully below, the Court denies Plaintiffs' motion for an order extending the expiration of the Consent Order.

### A. *The Expiration Date of the Consent Order is Not a "Deadline"*

Plaintiffs contend that the ending date of the Consent Order is a "deadline" that falls under the coverage of the relevant General Orders. This definitional argument requires the Court to consider the meaning and usage of "deadline"—a word that does not appear in the Consent Order. It does, however, appear in the General Orders. None of relevant documents defines "deadline," so the Court must "employ the ordinary meaning of the term." *Cranberry Growers Cooperative v. Layng*, 930 F.3d 844, 850 (7th Cir. 2019). When considering the ordinary meaning of an "undefined term," dictionaries are, of course, "a good place to start." *See United States v. Zabawa*, 719 F.3d 555, 559 (6th Cir. 2013); *Cranberry Growers*, 930 F.3d at 850 (relying upon dictionary definition in analyzing meaning of statutory term).

5

Merriam-Webster defines "deadline" as "a date or time before which something must be done." Webster's Seventh New Collegiate Dictionary (1963); *see also* Black's Law Dictionary (11th ed. 2019) ("deadline" is a "cutoff date for taking some action"). These definitions presuppose that a given task or action has yet to be completed but must be done, affirmatively, before a certain date or time. *See Rivera-Longoria v. Slayton*, 264 P.3d 866, 870 (Ariz. 2011) (" 'deadline' typically refers to the date or time by which something must be done"). Significantly, the definitions do not refer to the *absence* of action: Webster's does not say "a date or time before which something must *or must not* be done," nor does Black's refer to a "cutoff date for taking *or not taking* some action." That these definitions of "deadline" do not refer to the absence of action strongly suggests that ordinary meaning of the word presupposes that some affirmative act must occur by a certain date.

This meaning of "deadline" is relevant to discerning the effect, if any, of the General Orders in this case. In this Court's view, the deadline provisions of the General Orders are most naturally read as extending, due to the challenges of the COVID-19 emergency, the last point by which affirmative acts must be performed. Examples of such affirmative acts include filing briefs, exchanging discovery requests, completing depositions, discharging meet-and-confer obligations, presenting motions, and the like. Each of those tasks requires positive action—which is not the same thing as refraining from taking positive action—and accordingly will take longer to complete due to the present COVID-19 circumstances. It is precisely this difficulty that the General Orders seek to ameliorate through the extension of deadlines.

Rather than requiring positive action, however, the Consent Order principally addresses actions that Defendants *cannot* take. Defendants are, in essence, enjoined under the Consent Order from soliciting Plaintiffs' employees; using Plaintiffs' trade secrets to the benefit of Defendants; and from "directly or indirectly accepting, engaging in, servicing or performing any business of the same type or kind as the business performed by [Plaintiffs] from or with respect to [certain current clients of Plaintiffs]." (Dkt. 41, ¶ 6.) In lay terms, Defendants cannot try to take Plaintiffs' secrets, employees, and customers. These proscriptions establish that the Consent Order does not, in relevant part, require Defendants affirmatively to *do* anything.

Accordingly, under the accepted and common definition of "deadline," the General Orders do not, by operation of law, extend the expiration date of the Consent Order. Because no affirmative acts must be completed by a date certain, there is no deadline to extend.[3]

---

[3] Plaintiffs cite *Servco Ins. Servs. Wash., LLC v. Soroka*, No. 20-CV-0313RSL, 2020 U.S. Dist. LEXIS 42808 (W.D. Wash. Mar. 11, 2020), in support of their argument that "the expiration of a Court order is a deadline." (Dkt. 93, p.7.) Defendant responds, correctly, that Servco's "passing" use of "deadline" provides "no meaningful explanation of the word[.]" (Dkt. 84, p.12 n.12.) This lack of "explanation" is understandable, for it does not appear that the

6

Although the determination of the meaning of "deadline" is fatal to Plaintiffs' request, the Court notes that the term "expiration" more accurately defines the nature of the Consent Order's ending date. "Expiration" is defined as "[t]he ending of a fixed period of time; esp., a formal termination on a closing date." Black's Law Dictionary (11th ed. 2019). Significantly, the word "expiration" (unlike "deadline") actually appears in the Consent Order. (Dkt. 41, ¶7 (referring to the "expiration of this Consent Order"). And for good reason, because "expiration," used correctly, fits well within the Consent Order's terms: "This Consent Order will remain in place for 90 days from the date of entry. . . ." (Dkt. 41, ¶8.) Ninety days "from the date of entry" constitutes, as Black's defines expiration, the "ending of a fixed period of time" and equates to "a formal termination on a closing date." Black's Law Dictionary (11th ed. 2019). Because "expirations" are not, unlike "deadlines," generally extended by the relevant General Orders, the expiration of the Consent Order remains in place.

Plaintiffs make various arguments in support of their view that the General Orders extend the Consent Order, but none is persuasive. For example, Plaintiffs contend that, "[p]ursuant to the [Consent Order's] terms," the "*deadline* for the Consent Order to expire is April 28, 2020." (Dkt. 80, ¶3 (emphasis added).) But this reading of the Consent Order is tortured. To begin, despite Plaintiffs' assertion, the literal terms of the Consent Order do not include "deadline." Moreover, it is odd to refer to a *deadline* for an expiration. An expiration stands alone—the date either exists or it does not. No affirmative act is required for something to expire. Referring to a "deadline" for an "expiration" is redundant, confusing, and inconsistent with the common usage of "expiration."

Plaintiffs also contend that "even based on Consent Defendants' definition of 'deadline' (i.e., a cutoff date for taking action), the expiration of the Consent Order is a deadline, in that it provides a 'cutoff date' for action by the Consent Defendants—i.e., the action of *abstaining* from solicitation, acceptance, servicing, etc." Although creative, Plaintiffs' reframing the absence of action as an *affirmative* act borders on sophistic. It may be true that a decision to avoid certain conduct requires a conscious choice, but a mental decision, standing alone, does not constitute action. Plaintiffs cite no authority in support of their novel view that abstention is action.

Finally, Plaintiffs assert that "the Consent Order itself expressly embodies the parties' mutual intent that its term is subject to 'further order of the Court.' " (Dkt. 93, p.8.) In other words, Plaintiffs suggest that the Parties always expected and agreed that the Court could extend the Consent Order unilaterally. This argument is contrary to the record, which reflects that Defendants opposed Plaintiffs' efforts to include a 120-day term in the Consent Order. (Dkt. 85-1; Dkt. 93, p. 4.) It is hard to accept that Defendants rejected a 120-day defined term yet were willing to accept

---

court in *Servco* was required to address the issues presented by Plaintiffs' Motion for Clarification. For this reason, as well as the reasons set forth elsewhere in this Statement, the Court declines to follow *Servco*.

language empowering a judge to extend the Consent Order—at any time and for any reason—for an indefinite period. For their part, Defendants contend that the phrase "further order of the Court" is more "plausibly interpreted as permitting the Court to dissolve the Consent Order *before* the 90-day period ends." (Dkt. 84, p.11, n.10.) Defendants may be correct, but the Court need not decide the issue. At a minimum, the Court declines to interpret the phrase "further order of the Court" as reflecting an agreement between the Parties to allow a judge to extend the term of the Consent Order unilaterally.

Based on the foregoing, the Court finds that the expiration of the Consent Order does not constitute a "deadline" that was extended by operation of the COVID-19 related General Orders.[4]

### B.  *Due Process and Equitable Considerations*

In addition to the foregoing textual analysis, there are broader considerations of due process and equity that require the Court to deny Plaintiffs' request. In short, extending the Consent Order under the unique circumstances present in this case would violate Defendants' due process rights and fail to account adequately for important considerations of equity and fundamental fairness.

It is undisputed that the Consent Order was the result of an *agreement* between the Parties. Whether the Consent Order is now beloved, hated, or somewhere in between is immaterial: this Court entered it at the Parties' request, pending an anticipated preliminary injunction hearing. And because the Consent Order obviated the need for an immediate hearing on the merits, the Court avoided the need to rule on whether preliminary injunctive relief was appropriate. As a result, Plaintiffs have yet to be held to their burden of proof.

This absence of a genuine adversarial proceeding is fatal to the Motion for Clarification. To begin, the Court is unaware of any legal authority that would permit it to extend a "consent" order where the party against whom it is directed *does not consent* to the extension.[5] Without evidence that Defendants agreed to be bound to an extension, the question remains as what would be required for the Court lawfully to

---

[4] To the extent the Court's analysis of the effect of the General Orders is incorrect, the Court relies upon its retained authority in deciding that the expiration date of the Consent Order will not be extended over Defendants' objection. *See* Second Amended General Order 20-0012, ¶13 (the Order "does not affect the authority of judges to enter orders in any civil or criminal cases").

[5] Plaintiffs' efforts to suggest Defendants' consent—by arguing, for example, that the phrase "further order of the Court" reflects Defendants' intent to be bound by a Court-ordered extension—fail completely to balance the overwhelming evidence that Defendants do not consent to an extension of the Order and have never intended to be bound by it for longer than 90 days.

8

enjoin Defendants on a preliminary basis.

It bears repeating that there has been no judicial review of whether a preliminary injunction or similar relief is warranted. Preliminary injunctive relief is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original) (quotation marks and citation omitted); *see also Boucher v. Sch. Bd. of Sch. Dist. of Greenfield*, 134 F.3d 821, 823 (7th Cir. 1998) (same). To meet its burden, a party that seeks a preliminary injunction must clear two hurdles. *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of USA, Inc.*, 549 F.3d 1079, 1085–86 (7th Cir. 2008). First, the movant must "make a threshold showing that: (1) absent preliminary injunctive relief, he will suffer irreparable harm in the interim prior to a final resolution; (2) there is no adequate remedy at law; and (3) he has a reasonable likelihood of success on the merits." *Turnell v. CentiMark Corp.*, 796 F.3d 656, 661–62 (7th Cir. 2015). If the movant clears that hurdle, the court must then consider: "(4) the irreparable harm the moving party will endure if the preliminary injunction is wrongfully denied versus the irreparable harm to the nonmoving party if it is wrongfully granted; and (5) the effects, if any, that the grant or denial of the preliminary injunction would have on nonparties"—that is, the public interest. *Id.* at 662.

It is uncontested that Plaintiffs have not yet shown, in an adversarial proceeding, that they satisfy any elements of the standard for preliminary injunctive relief. And yet extending the Consent Order by judicial action—in the absence of consent—would effectively grant preliminary injunctive relief without the benefit to Defendants of an adversarial proceeding. Granting what would effectively amount to *ex parte* relief is not a step the Court is willing to take, for it is well settled that the "stringent restrictions" imposed on the availability of *ex parte* relief "reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." *American Can Co. v. Mansukhani*, 742 F.2d 314, 321-22 (7th Cir. 1984) (quoting *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 438-39 (1974)).[6]

Finally, although the Court finds that Plaintiffs' arguments fail as a matter of law, a brief comment on the equities is necessary. In their briefing, the Parties heavily dispute who is more to blame and who is more deserving of relief. It should, however, be self-evident that the Court cannot take a position at this stage on the merits of

---

[6] Plaintiffs cite several cases in which existing preliminary injunctive relief orders were extended due to COVID-19 concerns in support of their argument that the Consent Order can also be extended. (*E.g.*, Dkt. 93, p.9.) But a critical difference is that the orders in the cases Plaintiffs cite were entered following adversarial court proceedings. Because a court already conducted the multi-factor analysis required before entering preliminary injunctive relief, after hearing the arguments of the nonmoving parties, the due process concerns that are present here did not exist.

Plaintiffs' substantive allegations. It may well be that a factfinder will determine that Defendants' actions make them liable to Plaintiffs. But we are not yet at that point.

We are, however, far enough along to consider how Plaintiffs' litigation tactics and choices thus far affect whether the Consent Order should, as a matter of fairness, be extended. As the record described above reflects, Plaintiffs resisted a schedule that would have seen expedited discovery completed before a preliminary injunction hearing. (*E.g.*, Dkt. 67.) At one time at least, Plaintiffs were willing to accept a gap between expiration of the Consent Order and the potential entry of a preliminary injunction because they perceived a longer period of discovery to be in their interests. Given that background, Plaintiffs' current appeal to the potential for irreparable harm loses much of its force.

In any event, the Court's ruling does not leave Plaintiffs without a potential remedy. That the Court cannot extend the Consent Order is immaterial to Plaintiffs' right to seek preliminary injunctive relief for alleged irreparable harm—even on an expedited or emergency basis. To that end, the Court, consistent with Local Rule 72.1 and Internal Operating Procedure 14, will expand the referral to Magistrate Judge Harjani to include a request that he prepare a Report and Recommendation on any motion for a preliminary injunction. Magistrate Judge Harjani is very familiar with the record in this case, and the Court is confident that Magistrate Judge Harjani will be able expeditiously to conduct any preliminary injunction-related proceedings.

### III. CONCLUSION

For these reasons, Plaintiffs' Motion for Clarification Regarding Extension of Consent Order Deadline, which the Court construes as a request to extend the expiration of the Consent Order by 49 days, is denied. The referral to Magistrate Judge Harjani is expanded to include a request that he prepare a Report and Recommendation on any motion for a preliminary injunction. Defendants' motion for leave to file a sur-reply is denied.

Dated: April 23, 2020

                                                      John F. Kness
                                                      United States District Judge