**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| AON PLC et al, | ) | |
|     Plaintiffs, | ) | |
| | ) | Case No. 19 C 7504 |
|     v. | ) | |
| | ) | Magistrate Judge Sunil R. Harjani |
| Infinite Equity, Inc. et al, | ) | |
| | ) | |
|     Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs have filed a motion to modify the Court's February 25, 2020 expedited discovery order [82] and seeks to compel production of the source code and metadata for the software *MyPerformanceAwards* from its inception. Plaintiffs' motion is more appropriately considered as a motion to reconsider the Court's previous February 25, 2020 order on expedited discovery. Plaintiffs advanced this same argument prior to the entry of the expedited order, and the Court ruled against Plaintiffs and ordered that source code and metadata be produced from June 2019 to the present. For the reasons stated below, Plaintiffs' motion [82] is denied.

**Background**

Plaintiff Aon PLC and Aon Group, Inc. has sued Defendants Infinite Equity, Inc., Terry Adamson, Jon Burg, Daniel Coleman, Elizabeth Stoudt, and Tyler Evans for theft of trade secrets, fiduciary breaches, breach of contract, and other tortious conduct. The dispute arises out of the departure of four employees of Aon who created a competitor company, Infinite Equity, in approximately June 2019. Plaintiffs allege that these four employees created a software, *MyPerformanceAwards*, that is identical to Aon's software, *PeerTracker*, using Aon's proprietary code. Plaintiffs also allege that these four employees have solicited and obtained clients of Aon in breach of fiduciary duties and restrictive covenants. Defendants have denied the allegations. After Plaintiffs filed a motion for a temporary restraining order on January 2, 2020 [23], the parties reached an agreement on terms of an agreed 90-day injunction order, which was entered on January 29, 2020 [41]. The district judge granted Plaintiffs' motion for expedited discovery [38]. This Court, after holding numerous hearings on the matter, entered an expedited discovery order that detailed the limited discovery that would take place in preparation for the anticipated preliminary injunction proceeding [67].

**Discussion**

Motions to reconsider interlocutory orders are governed by Rule 54(b), which provides that non-final orders "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). While the Court has the

authority to reconsider its interlocutory orders, motions to reconsider an interlocutory order are not to be used to rehash past unsuccessful arguments. *See*, *e.g.*, *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996). Rather, it is an opportunity to correct a manifest error of law or fact or consider newly discovered evidence. *See Miller v. Safeco Ins. Co. of Am.*, 683 F.3d 805, 813 (7th Cir. 2012). The Court also has authority under Federal Rule of Civil Procedure 16(b)(4) to modify its prior discovery order on a showing of good cause.

Furthermore, to obtain a preliminary injunction, a plaintiff must initially show that: (1) without such relief, it will suffer irreparable harm before final resolution of its claims; (2) traditional legal remedies would be inadequate; and (3) it has some likelihood of success on the merits. *Valencia v. City of Springfield, Illinois*, 883 F.3d 959, 965–66 (7th Cir. 2018). Moreover, in the context of deciding whether to allow expedited discovery, courts consider "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *Ibarra v. City of Chicago*, 816 F. Supp. 2d 541, 554 (N.D. Ill. 2011). With these principles in mind, the Court turns to the question presented by Plaintiffs' motion.

Plaintiffs have provided no newly-discovered evidence or demonstrated good cause for this Court to revisit its prior expedited discovery decision on the temporal range for the production of the software code and metadata. *First*, Plaintiffs argue that its expert witness, Ronald Schnell, has requested the source code "to provide a *complete analysis and opinion* regarding a comparison of the two codes." Doc. 82 at 4 [emphasis added]. That statement is telling. As this Court previously ruled, the issue here is the production of information for expedited discovery solely for the purposes of a preliminary injunction hearing, and not to uncover all the relevant facts related to the claims and defenses. The time for that more fulsome discovery will come later, once expedited discovery is complete and the preliminary injunction issue has been decided. The Court selected June 2019 as the start date for the production of software code as it was the date identified in the Complaint when the Aon employees allegedly left for Infinite Equity, and that continues to be a reasonable date for production in the context of expedited discovery.

*Second*, in claiming newly discovered evidence, Plaintiffs have now contended that the source code for *MyPerformanceAwards* was created before June 2019. However, this fact does not automatically mean it is a copy of Aon's *PeerTracker*. Rather, it simply means that the former Aon employees were working on the *MyPerformanceAwards* software prior to leaving Aon. Undoubtedly, Plaintiffs will argue that a reasonable inference is that these employees created the software by copying code from *Peertracker* while they were still employed at Aon. However, an equally reasonable inference, as Defendants will argue, is that these Aon employees had their own idea for a version of the software that relied upon their independent knowledge and experience in the industry, and then chose to leave to employ that technology at a competitor. In other words, the fact that the Aon employees may have started coding *MyPerformanceAwards* prior to leaving Aon, if true, does not constitute a new material fact (as opposed to an inference) warranting reconsideration of the Court's prior order.

*Third*, there are broader considerations that warrant denial of Plaintiffs' motion. For purposes of the preliminary injunction hearing, Plaintiffs need to demonstrate a likelihood of

success on the merits, and the source code produced for the almost one-year period is sufficient to determine whether there are elements of source code from *PeerTracker* that were copied into *MyPerformanceAwards*. In particular, since most of the employees at issue left Aon in June 2019, if elements of the source code from *PeerTracker* were copied into *MyPerformanceAwards*, one would expect it to still be present when these employees started up the new company. And if not one element of the *PeerTracker* source code is present in *MyPerformanceAwards* as of June 2019 or after, then it begs the question – what is the irreparable harm to Plaintiffs and why the need for a preliminary injunction? Put another way, the discovery that Plaintiffs have obtained is sufficient for purposes of the issues that need to be addressed at a preliminary injunction stage.

Furthermore, Defendant is correct that production of source code must flow both ways in order for each expert to be sure that they are comparing the same sets of data. In other words, if Plaintiffs are entitled to source code data of *MyPerformanceAwards* since inception, then Defendants are also entitled to additional source code data of *PeerTracker*, and at the very least as far back as the creation date of *MyPerformanceAwards*. This has the potential to significantly expand discovery and the resulting expert analysis.

As this Court previously stated, the proportionality concerns are significant in expedited discovery. Under normal circumstances, after the entry of a temporary restraining order, Plaintiffs would have a maximum of 28 days under Federal Rule of Civil Procedure 65(b)(2) to conduct discovery and prepare for a preliminary injunction hearing. Since Defendants agreed to an entry of a 90-day consent order, which essentially mooted the TRO proceedings, Plaintiff bought itself more time to conduct discovery for the preliminary injunction hearing. Even then, Plaintiffs were unable to commit to finish expedited discovery within this timeframe, necessitating a schedule that exceeded the length of the consent order. Accordingly, while the parties are receiving more time than they normally would to prepare for a preliminary injunction hearing, that scenario does not warrant expanding discovery any more than what was granted in the expedited discovery order. The Court's prior order balanced the interests of the parties in obtaining discovery to prove their claims and defenses at the preliminary injunction hearing, with the burdens and expense associated in conducting this discovery in an expedited proceeding.

It is important to recall that while Plaintiffs initially sought the *MyPerformanceAwards* source code and metadata from inception, Defendants were only willing to produce the current source code for the software. While the latter production would address the issue of irreparable harm, the Court determined that it would not provide sufficient information for Plaintiffs to address its likelihood of success on the merits. As a result, the Court considered the relevancy of the evidence, along with the burdens and costs of discovery, and chose June 2019 as the start date for the production of the source code and metadata for both *MyPerformanceAwards* and *PeerTracker* given that it was an important date identified in the Complaint  Plaintiffs have not provided any new information to change that analysis.

**Conclusion**

For the reasons stated above, Plaintiffs' motion to modify the Court's February 25, 2020 expedited discovery order and compel production of the source code and metadata for the software *MyPerformanceAwards* [82] is denied.

**SO ORDERED.**

Dated: April 23, 2020

Sunil R. Harjani
United States Magistrate Judge